

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50170 | **DATE** | 3/5/2002 |
| **CASE TITLE** | LEE vs. BARNHART | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, Plaintiff's motion for summary judgment is hereby denied. Defendant's motion for summary judgment is granted. Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 5 2002 | |
| | Notified counsel by telephone. | date docketed | 16 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3/5/2002 | |
| | | date mailed notice | |
| tml | courtroom deputy's initials | | |
| | Date/time received in central Clerk's Office | gg mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
02 MAR -5 PM 1:11
FILED-WD

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| WAYNE LEE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 50170 |
| | ) | |
| v. | ) | Philip G. Reinhard |
| | ) | P. Michael Mahoney |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, (Plaintiff), seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Supplemental Security Income Benefits (SSI) pursuant to Title XVI of the Social Security Act (the Act). 42 U.S.C. §1382c(a)(3). This matter is before the Magistrate Judge pursuant to consents filed by both parties on August 13, 2001. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

I. **BACKGROUND**

Plaintiff filed for SSI benefits on July 13, 1998, alleging disability beginning on July 1, 1998. (Tr.63-67). Plaintiff's application for benefits was denied on August 24, 1998. (Tr.44-47). On September 10, 1998, Plaintiff filed a request for reconsideration. (Tr.48). Plaintiff's request for reconsideration was denied on April 13, 1999. (Tr.49-51). Plaintiff then filed a request for a hearing before an Administrative Law Judge (ALJ) on April 23, 1999. (Tr.52-53). Plaintiff appeared, with counsel, before an ALJ on November 9, 1999. (Tr.24-41). In a decision dated June 30, 2000, the

ALJ found that Plaintiff was not entitled to SSI benefits. (Tr.11-23). On July 13, 2000, Plaintiff requested a review of the ALJ's decision by the Appeals Council. (Tr.9-10). On May 11, 2001, the Appeals Council denied Plaintiff's request for review. (Tr. 5-7). Plaintiff then filed this suit on May 31, 2001.

## II. FACTS

At his hearing before the ALJ Plaintiff testified that he is five feet, two inches tall, weighs 150 pounds, is right handed and the highest grade he completed in school was the eighth grade. (Tr. 31). Plaintiff stated that after leaving school he worked in a car wash and then joined the Army. (Tr. 32). Plaintiff was unemployed for a time after leaving the Army and had some difficulty in maintaining employment due to alcoholism. (Tr. 32). As to his current health, Plaintiff testified that he sees his treating physician, Dr. Ali and a surgeon to monitor his lungs, Dr. Myers. (Tr. 32). Plaintiff is sensitive to cold as a result of his having had lung cancer, had been on antibiotics two or three times in the past year and had not been hospitalized or to the emergency room in 1999. (Tr. 33). Plaintiff stated that he lived in a home he rented with his wife and two children. (Tr. 33-34). During the day, while his wife is at work and his children at school, Plaintiff testified that he reads during the day and does some general housekeeping and cooking but that if he tries to do too much he starts hurting and has to sit down. (Tr. 34-35). Plaintiff stated that he does not drive because his license was taken away so he takes the bus to his appointments if his wife is unable to take him. (Tr. 35). Plaintiff testified that he still had some pain from his surgery, but that the pain was improving and that he takes Tylenol for it. (Tr. 37). Plaintiff stated that he had been taking Tylenol with Codeine and that his doctors still offered him a prescription for it, but that he preferred not to take it because it bothers his stomach. (Tr. 37). As to work, Plaintiff stated that he was not working and wouldn't

know where to begin to look for part-time work. (Tr. 38). Plaintiff stated that the unemployment office has not been able to do anything for him because of his condition. (Tr. 38-39).

### III. MEDICAL HISTORY

A series of chest x-rays taken in May and June 1998 on Plaintiff indicates pleural effusion/thickening and a mass like density in the right lower lobe of the lung. (Tr. 117-119). Plaintiff's medical records indicate that in mid-April 1998, he began experiencing dyspnea and chest discomfort with purulent sputum, fever and hemoptysis. (Tr. 127). Chest x-rays demonstrated a right lower lobe infiltrate and air space opacity. (Tr. 127). A follow-up x-ray demonstrated persistence of a mass-like density in the right lower lobe. (Tr. 127). On June 19, 1998, Plaintiff reported that he had smoked up to three packs of cigarettes a day but that he had stopped six to eight weeks ago. (Tr. 127). On June 29, 1998, Plaintiff was admitted for surgical treatment of right lung squamous cell cancer. (Tr. 122). A right middle and right lower lobectomy was performed with resection of a small portion of the diaphragm. (Tr. 122). Plaintiff had no postoperative complications and was discharged on July 5, 1998, and showed good expansion of the remaining right lung. (Tr. 122). After the surgery, Plaintiff was seen at the Crusader Clinic in Rockford, Illinois. Treatment notes from July 1998 through January 1999, indicate that Plaintiff had some pain at the surgical site which resolved with Tylenol and some shortness of breath with exertion. (Tr. 211-215). Treatment notes from January through October 1999 indicate that Plaintiff was doing well, continued using an inhaler one to two times per day, and had little pain or shortness of breath. (Tr. 254-263).

On August 11, 1998, a Residual Functional Capacity Assessment (RFC) was completed by a non-examining physician. (Tr. 240-247). That RFC assessment indicated that Plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, could stand or walk for at least two

3

hours in an eight hour work day and sit for eight hours and could climb only occasionally. (Tr. 240-244). The RFC assessment further noted that Plaintiff should avoid exposure to extreme cold, and fumes, odors, dusts, gases and poor ventilation. (Tr. 244).

On September 19, 1998, Plaintiff's physician, Dr. Ali, completed an RFC questionnaire at the request of Plaintiff's attorney. (Tr. 198-202). Dr. Ali indicated that he had been treating Plaintiff since April 1998, and that Plaintiff suffered from shortness of breath and pain in his chest. (Tr. 198). Dr. Ali reported that Plaintiff had some depression. (Tr. 198). As to Plaintiff's capacity to do work, Dr. Ali reported that Plaintiff's symptoms are often severe enough to interfere with his attention and concentration, his ability to deal with work stress is marked, he can sit for six hours in an eight hour day, stand for two and walk for two, he is unable to crawl, climb, crouch or kneel and he cannot perform repetitive movements with his feet. (Tr. 199-200). Dr. Ali reported that Plaintiff is able to lift no more than five pounds frequently and no more than ten pounds occasionally, he can use his hands for repetitive simple grasping, but not fine manipulation or arm controls and he can walk one and a half blocks without rest. (Tr. 200). Dr. Ali reported that Plaintiff did not need a job that would permit him to change positions, but then reported that Plaintiff would need to shift positions in less than half of an hour, at will, and that he would need complete freedom to rest throughout the day. (Tr. 200). Dr. Ali stated that Plaintiff would have to elevate his legs 45 degrees for one to two hours if he were required to sit for prolonged periods of time. (Tr. 201). Dr. Ali further stated that Plaintiff's impairments would produce "good days and bad days" and that he would likely be absent from work more than three times a month and that all these limitations are permanent. (Tr. 201-202).

On November 23, 1999, Dr. Ali completed a Medical Assessment of Ability to do Work Related Activities with respect to Plaintiff. (Tr. 304-305). Dr. Ali indicated that Plaintiff could lift

4

no more than ten pounds occasionally, had no restrictions in standing, walking or sitting and could perform postural activities, such as climbing, balancing, stooping, etc. occasionally. (Tr. 304-305). Dr. Ali reported that Plaintiff was restricted in that he should avoid exposure to dust, fumes and chemicals as that may cause him to become short of breath. (Tr. 305). Dr. Ali also noted that Plaintiff would be tired by any kind of exertion. (Tr. 305).

On March 17, 1999, Plaintiff was examined by Dr. Lawrence Hankin for the Illinois Office of Disability Determination Services. (Tr. 226-227). Dr. Hankin noted that Plaintiff has a moderately limited exercise tolerance with no problems at rest. (Tr. 226). Plaintiff had some mild ronchi and wheezing on expiration. (Tr. 227). In summary, Dr. Hankin reported that Plaintiff suffers from pulmonary problems secondary to mild to moderate chronic obstructive pulmonary disease and restrictive disease secondary to removal of the right lower lung. (Tr. 227).

A Psychiatric Review Technique Form (PRTF) completed on December 31, 1998, by Dr. Hudspeth, Psy.D. indicated that Plaintiff had no medically determinable mental impairment and noted a substance addiction disorder, in remission. (Tr. 231).

## IV. STANDARD OF REVIEW

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable

5

minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

## V. **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and

accordingly denied his application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work

---

[1]The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

8

are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala*, 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI.   ANALYSIS

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any

9

substantial gainful activity at any time relevant to his decision issued on June 30, 2000. (Tr. 14-23).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and eighty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found Plaintiff suffers from carcinoma of the lung status post-resection, chronic obstructive lung disease and a history of substance abuse in remission. (Tr. 22).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from severe impairments. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C. Step Three: Does claimant's impairment meet or medically equivalent to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 22).

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D. Step Four: Is the claimant capable of performing work which the claimant performed in

the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. The finding of the ALJ as to Step Four of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Four of the Analysis is affirmed. (Tr. 22).

E. Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

At Step Five The ALJ determined that although Plaintiff's Residual Functional Capacity did not allow him to perform the full range of light work, there existed a significant number of jobs in the national economy that he can perform. The ALJ determined that Plaintiff's RFC was that he could lift no more than ten pounds, he could sit for six to eight hours in a work day, one to two hours at a time, could walk or stand for thirty minutes at a time and up to four hours a day, cannot work in settings with respiratory irritants or extreme cold, heat or humidity, cannot climb, balance, stoop or crouch more than occasionally and cannot do any strenuous activity. (Tr. 22). Therefore, the ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary work. (Tr. 22). The ALJ determined that Plaintiff is classified as a younger individual, has a limited education, and that Plaintiff's acquired skills are not transferable. (Tr. 22). As to Plaintiff's exertional limitations, the ALJ found that Plaintiff could perform the full range of sedentary work and that the non-exertional limitations do not significantly erode the occupational base of jobs contemplated under Medical-Vocational rule 201.19. (Tr. 22). The ALJ determined that the Medical-Vocational rule, in conjunction with SSR 96-9p, warrants a conclusion that Plaintiff retains the capacity to perform jobs existing in significant numbers in the economy. (Tr. 23).

11

Sufficient evidence exists supporting the ALJ's determination at Step Five. This court notes that the majority of Plaintiff's medical records included in the administrative records are duplicates of the same records concerning his right lower lobectomy and the treatment notes from his physician from right before and after his surgery. Plaintiff's treating physician, Dr. Ali, completed two assessments of Plaintiff. In his earlier assessment, dated September 19, 1998, Dr. Ali noted more limitations than he reported in his later, November 23, 1999, report indicating a substantial improvement in Plaintiff's RFC. (Tr. 197-202 and 304-305). Dr. Ali's November 1999 report indicates that Plaintiff can lift up to ten pounds, has no limitations in his ability to sit, stand or walk, has some postural and environmental limitations and tires with any kind of exertion. (Tr. 304-305). Treatment notes from Plaintiff's treating physician, from after Plaintiff's surgery, indicate continuing improvement, no shortness of breath and decreasing pain at the surgery site that Plaintiff's treats with Tylenol. (Tr. 211-215 and 254-263).

Plaintiff asserts that the ALJ failed to adequately consider the opinions of Plaintiff's treating physician, Dr. Ali. (Plaintiff's Memorandum at 4, filed 9/202001). This court notes that the ALJ's determination as to Plaintiff's RFC is actually supported by Dr. Ali's November 1999 report. There is no indication in the ALJ's hearing decision that he overlooked Dr. Ali's opinions or accorded them less weight than was appropriate. On page 5 of his decision, the ALJ specifically refers to Dr. Ali's reports and determines that the medical evidence did not support a finding of limitations greater than those provided for in his decision. (Tr. 18). Plaintiff would like this court to use his interpretation of Dr. Ali's November 1999 report rather than relying on the plain wording of Dr. Ali's findings. (Plaintiff's Memorandum at 8, filed 9/20/2001). This court declines to do so. The ALJ's findings as to Plaintiff's RFC is clearly supported by the RFC determinations of Dr. Ali and the non-

examining physician.

Plaintiff also asserts that the ALJ erred in failing to secure vocational expert testimony at Plaintiff's hearing. (Plaintiff's Memorandum at 8, filed 9/20/2001). Rather, the ALJ relied upon Medical-Vocational rule 201.19 in finding that Plaintiff was not disabled. Generally, the ALJ may rely on the Medical-Vocational Guidelines in determining whether a claimant is disabled, unless a claimant suffers significant non-exertional limitations, in which case the ALJ must call upon a vocational expert for assistance. *See, Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). However, if the ALJ finds that a claimant lacks significant non-exertional limitations, and that finding is supported by substantial evidence, then it is not an error for the ALJ to rely on the grids and not call upon the services of a vocational expert. *See, Binion v. Shalala*, 13 F.3d 243, 247 (7th Cir. 1994).

In this case, the ALJ determined that Plaintiff's additional limitations did not significantly erode the occupational base for sedentary work. This court's review of the applicable Social Security Rulings (SSR's) further demonstrates that the ALJ did not err in failing to utilize a vocational expert. Plaintiff's non-exertional limitations include postural limitations, i.e. Plaintiff is limited in his ability to bend, stoop, crawl, climb etc., and environmental limitations, i.e. Plaintiff cannot work in conditions that include extreme temperatures, humidity or concentrated or excessive respiratory irritants. SSR 96-9p provides that such limitations do not significantly erode the occupational base for sedentary work. SSR 96-9p states that postural limitations, such as those found with respect to Plaintiff, do not significantly erode the occupational base for sedentary work because the restricted activities are not usually required in sedentary work. As to the environmental limitations, SSR 96-9p provides that "few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration or unusual hazards."

In light of the forgoing, the ALJ was justified in relying on the Medical-Vocational Guidelines. SSR 96-9p states that an ALJ may use the resources of a vocational expert in more complex cases. A review of the record in this case demonstrates a lack of complexity requiring the use of a vocational expert. The non-exertional limitations found by the ALJ are squarely addressed by SSR 96-9p.

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Five of the Analysis is affirmed.

## VII. CONCLUSION

For the aforementioned reasons, Plaintiff's motion for summary judgment is hereby denied. Defendant's motion for summary judgment is granted.

**ENTER:**

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 3/5/02

14